# EXHIBIT D

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA, CHARLESTON DIVISION

CASE NUMBER 2:06-CV-1754

FIREMAN'S FUND INSRUANCE COMPANY, as

SUBROGEE for LIMEHOUSE & SONS, INC.,

        Plaintiffs,

   v.

AMERICAN EQUIPMENT CORPORATION, INC., ET AL.,

        Defendants.

DEPOSITION OF

DAVID McCANDLESS

COPY

At Raleigh, North Carolina

Tuesday, April 14, 2009

10:02 a.m.

Reported by: Lindsey D. Cline, CVR



Court Reporting Services  •  (800) 289-1017  •  (919) 832-4114  •  (704) 543-7103  •  Fax: (919) 832-4181
P.O. Box 10728  •  600 Wade Avenue, Suite B  •  Raleigh, NC 27605  •  www.crsdepo.com

David McCandless

1       I don't know categorically that I can
2       eliminate internal failure to the starter and the
3       heat generation associated with that given what we
4       know now.
5  Q.   Well, was there anything that you saw that
6       indicated that the starter was the cause --
7       whether it's the right starter or the wrong
8       starter, that the starter was involved in the
9       cause and origin of the fire?
10 A.   Well, I mean, we certainly had heat patterns down
11      there. There wasn't something that I observed
12      intrinsically that made me go, "Oh, it's
13      absolutely the starter that caused it." But
14      again, that's -- it's information that I didn't
15      know. I didn't have the background and
16      maintenance information that the starter had even
17      been changed at any time in the recent history
18      prior to the fire.
19 Q.   Well, if the starter physically caused the fire,
20      would you expect to see some physical evidence of
21      that that would at least lead you not to conclude
22      that the cause and origin was something else?
23 A.   Well, what you can have is you can have the
24      starter -- a failure in the starter that overheats

1           conclusion that the starter had caused the fire.
2     Q.    But was there any evidence to you when you had the
3           engine in front of you to look at that the starter
4           caused the fire?
5     A.    Again, the starter was damaged and, no, I didn't
6           propose that we disassemble the starter or take
7           the starter off.
8     Q.    Well, sir, there's a lot of things that were
9           damaged, right?
10    A.    Sure.
11    Q.    Okay. Was there -- I'm going to ask you the same
12          question because I don't think you've given me an
13          answer, yes or no, and I believe it's a yes or no
14          question.
15                When you looked at the engine was there
16          any evidence to you that the starter caused the
17          fire?
18    A.    There's -- When you say any evidence, there's some
19          evidence that it could have, just in the sense of
20          we have the insulation burned off of the leads
21          directly adjacent to the starter. So to the
22          extent that we have that type damage, yes. I
23          didn't -- it would have been more helpful,
24          certainly, to have the information and history

David McCandless

1  saw?
2  A. Yes.
3  Q. Okay. Does it remain your conclusion that the most likely cause and origin of the fire was the failed hydraulic hose that you saw?
6  A. Most likely, probably so, yes.
7  Q. Okay. Did you see any evidence of a starter failure?
9  A. There is -- there's certainly evidence of heat on the external case of the starter. I mean, we certainly have the leads going to the starter that the insulation is consumed on.
13 Q. So you saw fire damage?
14 A. Well, yes, there's heat damage there.
15 Q. Okay. And -- I'm sorry, I was cutting you off.
16 A. Well, what I'm saying is is that -- that damage is -- the damage we see there is not -- does not uniquely exclude the starter --
19 Q. Okay.
20 A. -- based on the investigation that was done.
21 Q. Because there's -- And I'm just trying to do this so I can understand it. Is it your testimony that because there is heat damage around the starter that you couldn't exclude the starter as the

| | | |
|---|---|---|
| 1 | | if we have to put percentages on it -- |
| 2 | Q. | (Mr. Caputo) Well, we don't have to. |
| 3 | A. | I don't know that I can put percentages on it. I |
| 4 | | know that given the information that we have now, |
| 5 | | the starter is a -- to me, a significant |
| 6 | | possibility that I cannot exclude. |
| 7 | Q. | Right, but I'm not asking you to exclude it. I'm |
| 8 | | asking you based on the evidence you have now, is |
| 9 | | the failed hose a more likely cause of the fire |
| 10 | | than anything associated with the starter? |
| 11 | | MR. HORTON: Object to the form again. |
| 12 | | THE WITNESS: If a failed hose, yes. |
| 13 | Q. | (Mr. Caputo) What about this failed hose that you |
| 14 | | saw? |
| 15 | A. | Well, we also know that we have preexisting leaks, |
| 16 | | and I don't think you can categorically exclude |
| 17 | | that the hydraulic fluid out of this hose is the |
| 18 | | first thing to ignite more so than the potential |
| 19 | | leak of another hose. |
| 20 | Q. | Well, let's -- That's fine and we can talk about |
| 21 | | other alleged leaks, but the failed hose that you |
| 22 | | saw, based on the evidence today, is that hose a |
| 23 | | more likely cause of the fire than anything |
| 24 | | associated with the starter? |

STATE OF NORTH CAROLINA

COUNTY OF WAKE

C E R T I F I C A T E

I, Lindsey D'Anne Cline, Court Reporter and Notary Public, the officer before whom the foregoing proceeding was conducted, do hereby certify that the witness(es) whose testimony appears in the foregoing proceeding were duly sworn by me; that the testimony of said witness(es) were taken by me to the best of my ability and thereafter transcribed under my supervision; and that the foregoing pages, inclusive, constitute a true and accurate transcription of the testimony of the witness(s).

I do further certify that I am neither counsel for, related to, nor employed by any of the parties to this action in which this proceeding was conducted, and further, that I am not a relative or employee of any attorney or counsel employed by the parties thereof, nor financially or otherwise interested in the outcome of the action.

This the 16th day of April, 2009.

*Lindsey D'Anne Cline*
Lindsey D'Anne Cline
Notary Public No. 20002130221